UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIM. ACTION NO. 3:24-00246-01 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| KENCUNYEA WARFIELD (01) | MAG. JUDGE KAYLA D. MCCLUSKY |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to suppress [doc. # 21] filed by Defendant, Kencunyea Warfield. For reasons stated below, IT IS RECOMMENDED that the motion be DENIED.

### Background

On the afternoon of June 26, 2024, City of Monroe Police Officer, Corporal Kelsie Wilson ("Officer Wilson")[1] observed a blue, Mercury Grand Marquis, known to be operated by Kencunyea Warfield ("Warfield"), stray across the dashed yellow line while traveling westbound on Orange Street in Monroe, Louisiana. Accordingly, Officer Wilson initiated a traffic stop of the vehicle. When Warfield exited the vehicle, Wilson detected the distinctive odor of marijuana emanating from the car. A brief search of the carpet in front of the driver's seat produced a pea-sized marijuana residue. A few minutes later, Wilson found a glass pipe or "bowl" lying between the front seats.[2] In due course, City of Monroe Police Officer Anthony Cowan (hereinafter "Cowan" or "Detective Cowan") joined the search and discovered a firearm

---

[1] As of July 2025, Wilson will have seven years' experience with the Monroe Police Department and is currently a corporal with the department. He also is a member of the High Enforcement Apprehension Team (also known as "HEAT").

[2] A bowl is commonly used to smoke methamphetamine or marijuana. In this case, however, Wilson believed that it had been used for the former purpose.

secreted behind the glove compartment. After a call to dispatch, officers confirmed that Warfield was a convicted felon, and he was arrested.

On November 6, 2024, a federal grand jury returned a one-count indictment against Warfield for felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The indictment also included forfeiture allegations. Warfield was arraigned on November 20, 2024, whereupon he entered a plea of not guilty as to the lone count. (Minutes [doc. # 14]).

Warfield, via counsel, filed the instant motion to suppress on January 27, 2025. He contends that the officers planned to initiate the traffic stop after he left his house because they were under the impression that he had large amounts of drugs on him. Consequently, he maintains that the officers employed a "pretext reason for the stop." Warfield further argues that the officers did not pursue the traffic infraction once they stopped him. Moreover, they lacked a legitimate reason to search his vehicle based on the false claim that they smelled marijuana.

The Government filed its response to the motion on March 17, 2025. (Gov.'t Response [doc. # 24]).

The Court held a hearing on the motion on March 20, 2025, where the Government presented testimony from a single witness, Officer Wilson, and received into evidence, by stipulation, two videos, plus three still images captured from the videos, offered by Warfield

    A) Body Cam Video of Detective Anthony Cowan;

    B) Image of Detective Cowan's white vehicle;

    C) Body Cam Video of Officer Wilson;

    D) Image of pea-sized substance; and

    E) Image of Wilson and Warfield at the back of his vehicle.

[doc. #s 21-2-6, 30]. The Government also introduced the same video footage from Officer Wilson's body cam submitted by Warfield. [doc. # 27]. The matter is ripe.

## Law and Analysis

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV.[3] "A defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional. However, where a police officer acts without a warrant, the government bears the burden of proving that the search was valid." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (internal citations omitted).

Generally, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search or seizure. This prohibition applies as well to the fruits of the illegally seized evidence." *United States v. Wallace*, 885 F.3d 806, 810 (5th Cir. 2018) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)). The purpose of this exclusionary rule is to deter unlawful police conduct: by refusing to admit evidence gained as a result of conduct that deprives the defendant of some right, "the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of the accused." *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (quoting *United States v. Leon*, 468 U.S. 897, 919 (1984)). However, the exclusionary rule is not without limits, and suppression of evidence should be "ordered only on a case-by-case

---

[3] The protections of the Fourth Amendment extend to the states through the Fourteenth Amendment. *Dunaway v. New York*, 442 U.S. 200, 207 (1979).

basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.*

**I.    Traffic Stop**

A traffic stop constitutes a seizure under the Fourth Amendment, and its legality is analyzed under the framework set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (citations omitted). Under *Terry's* two-part reasonable suspicion inquiry, the court examines "whether the officer's action was: (1) justified at its inception; and (2) reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (quoting *Terry*, 392 U.S. 19–20) (internal quotation marks omitted).

A.    <u>Initial Stop</u>

Under the first prong, a traffic stop is justified at its inception when an officer has a reasonable suspicion that "some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *Lopez-Moreno*, 420 F.3d at 430. Reasonable suspicion exists when the officer has "a particularized and objective basis for suspecting legal wrongdoing" based on the totality of the circumstances. *Id.* (citations and internal quotations omitted). An officer must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Id.*

"A police officer may stop a vehicle if he has probable cause to believe a traffic violation has occurred." *United States v. Khanalizadeh*, 493 F.3d 479, 482 (5th Cir. 2007) (citing *United States v. Cole,* 444 F.3d 688, 689 (5th Cir. 2006) and *Whren v. United States*, 517 U.S. 806, 810

4

(1996)). Of course, "[p]robable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of [a stop or] arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Zavala*, 541 F.3d 562, 575 (5th Cir. 2008) (citations omitted). The constitutional reasonableness of traffic stops does not depend on the actual motivations of the individual officers involved. *Whren*, 517 U.S. at 813. Therefore, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id*.

In this case, the traffic stop was justified at its inception because Officer Wilson testified under oath that he observed both driver's side tires of Warfield's vehicle stray over the yellow, dashed line, i.e., the center line of the road. *See* Def. Exh. B (video capture showing dashed yellow line in middle of the road).[4] Once Officer Wilson observed Warfield's car cross the center line, he had probable cause to believe that a traffic offense had occurred, specifically, a violation of Louisiana Revised Statute § 32:71. *United States v. Zarate*, 18-CR-0112 (5), 2019 WL 3995962, at *2 (W.D. La. July 1, 2019), *R&R adopted,* 2019 WL 3995983 (W.D. La. Aug. 22, 2019).

Warfield contends that the traffic infraction was not the real reason the officers stopped him. He emphasizes that, in a post-arrest, telephone conversation with a supervisor, Detective Cowan stated that, "we thought he was going to have a load of dope on him, so I got Kelsie to stop him . . ." (Cowan Body Cam.; Def. Exh. A at 25:09). Conversely, Officer Wilson testified that they were watching Warfield because of a juvenile trafficking case. Nonetheless, Wilson

---

[4] Wilson also testified that he had arrested Warfield about one year earlier, and, at that time, he was driving the same Mercury Grand Marquis with a temporary tag. On the date of the stop at issue, Warfield still had a temporary tag on the car.

agreed that Warfield was a known narcotics distributor in Ouachita Parish and that he and other officers had arrested Warfield several times in the past.

The Court reiterates that, so long as there was an objective basis to support the stop, the officer's subjective motivation for the stop is irrelevant. *Lopez-Moreno*, 420 F.3d at 432. Here, Officer Wilson testified that he was waiting at the intersection of Orange and South 8th Streets. To be sure, Detective Cowan stated on the video that he "got" Officer Wilson to stop Warfield. However, it is not difficult for officers to support a stop by waiting until they observe a traffic infraction. In this case, Officer Wilson did not have to wait long because he observed the driver's side tires of Warfield's vehicle stray over the dashed line in the center of the roadway, and, thus, he ended up stopping Warfield's vehicle no more than two streets over from where he had been waiting. Accordingly, the Court credits Officer Wilson's sworn and uncontroverted testimony regarding the traffic infraction that he personally observed, which provided an objectively reasonable basis to support the stop.

B. Continued Detention

Under *Terry*'s second prong, the detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004). "During a traffic stop, a police officer may examine a driver's license and vehicle registration, [and] run a computer check on the driver and the vehicle." *Zavala*, 541 F.3d at 576. An officer "must ensure that the driver does not have a warrant or a suspended license, and that the vehicle is registered and not reported stolen. These checks are routine and quickly performed." *Id.* at 577. An officer "may also ask about the purpose and itinerary of the occupant['s] trip as part of [his] investigation," because these questions are "reasonably

6

related in scope to his investigation of the circumstances that caused the stop." *United States v. Pack*, 612 F.3d 341, 350 (5th Cir.), *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010). Furthermore, an officer may question the driver on matters unrelated to the purpose of a traffic stop, "so long as these unrelated questions do not extend the duration of the stop." *Id.*

"[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). "Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate th[at] purpose." *Id.* (internal quotations omitted). The authority for the seizure "ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* Thus, although certain unrelated inquiries that do not lengthen a roadside detention are permissible, a traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete [its] mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

"In order to continue a detention after such a point, the officer must have a reasonable suspicion supported by articulable facts that a crime has been or is being committed." *United States v. Santiago*, 310 F.3d 336, 342 (5th Cir. 2002). "[I]f additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed." *United States v. Lopez-Moreno*, 420 F.3d 420, 431 (5th Cir. 2005) (citations omitted).

Warfield asserts that Officer Wilson never pursued the traffic stop and instead went straight to his vehicle and started searching for drugs. Warfield's argument, however, is not supported by the hearing testimony or the video evidence. Rather, Officer Wilson's body cam

confirms that, as Officer Wilson walked up to Warfield's car immediately after stopping him, he told Warfield that he had been driving "all in the middle . . . on the line." (Wilson Body Cam at 00:40; Def. Exh. C). Officer Wilson then asked Warfield where he "stayed," before asking him for his "license, registration, and insurance." *Id*. at 00:52. Warfield replied that he did not have any of those things. *Id*. At that point, Officer Wilson was authorized to extend the stop because he had reasonable suspicion that Warfield had committed other motor vehicle infractions. *See, e.g.*, LA. R.S. § 863.1 (proof of insurance requirement).[5] Furthermore, far from dropping the initial purpose for the stop, Officer Wilson testified that he charged Warfield with improper lane usage, no insurance, and no driver's license. In addition, Officer Wilson testified that, as soon as Warfield got out of the vehicle, he smelled marijuana.

Officer Wilson then escorted Warfield to the rear of the vehicle, patted him down, and advised Warfield of his *Miranda* rights. (Wilson Body Cam at 01:10-25; Def. Exh. C). Officer Wilson returned to the still open driver's side door and peered inside. *Id*. at 01:33. After a few seconds, he walked back to where Warfield was standing and asked him whether he had anything illegal in the car, which Warfield denied. *Id*. at 01:40-01:55. Officer Wilson then asked whether Warfield had been around someone who was smoking or something because it smelled like marijuana in the car. *Id*. at 01:56-2:03. Officer Wilson returned to the driver's side door, and after a few seconds of examining the carpet, he extracted a pea-sized object that he identified as "weed," which he showed to Warfield. *Id*. at 02:50. Officer Wilson also testified that there

---

[5] In fact, if a motorist is unable to show proper proof of insurance, then the vehicle "shall be impounded." *United States v. Swan*, 259 Fed. App'x. 656, 659 (5th Cir. 2007) (citing La. R. S. § 32:863.1(C)(1)(a)).

were small pieces of marijuana shavings all around the floorboard, which were difficult to collect because they were mixed with dirt and lint.

In his brief, Warfield questions whether Officer Wilson was able to smell any marijuana at all. However, besides observing the marijuana shavings all around the floorboard, Officer Officer Wilson testified that he smelled marijuana as soon as Warfield got out of the vehicle. Officer Wilson then questioned Warfield about the marijuana immediately after he peered into the open car door. Officer Wilson apparently believed that the amount of marijuana was not negligible because he also charged Warfield with possession of marijuana.

Ultimately, the Court credits Officer Wilson's uncontroverted testimony that he smelled marijuana emanating from the car, which provided him another objectively reasonable basis to extend the stop. In other words, the officer's actions demonstrated a "graduated response to emerging facts, [which] were reasonable under the totality of the circumstances, and did not unconstitutionally extend [defendant's] detention." *United States v. Pauyo*, 341 Fed. App'x. 955, 956 (5th Cir. 2009) (citing *United States v. Brigham,* 382 F.3d 500, 506 (5th Cir.2004) (en banc)).

II.  **Vehicle Search**

   A.  Automobile Exception

It is manifest that, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *California v. Acevedo*, 500 U.S. 565, 580 (1991). One such exception that is "specifically established and well-delineated" is the so-called automobile exception. *United States v. Ross*, 456 U.S. 798, 825

9

(1982). The automobile exception allows police to search a vehicle if they have probable cause to believe that the vehicle contains contraband." *United States v. Fields*, 456 F.3d 519, 523 (5th Cir. 2006) (citing *Maryland v. Dyson*, 527 U.S. 465, 467 (1999)). "[T]he automobile exception does not have a separate exigency requirement: 'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more.'" *Dyson*, 527 U.S. at 467 (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam)). Probable cause to search the vehicle "depends on the totality of the circumstances viewed in light of the observations, knowledge, and training of the law enforcement officers involved in the warrantless search." *United States v. McSween*, 53 F.3d 684, 686 (5th Cir. 1995) (internal quotations omitted).

      The law in the Fifth Circuit is clear: if officers smell marijuana coming from inside the vehicle, they have probable cause to search the vehicle. *See United States v. Lork*, 132 F. App'x 34, 35-36 (5th Cir. 2005) (per curiam) (holding that, after conducting a lawful traffic stop for speeding, the officer detected an odor of marijuana emanating from the defendant's vehicle, thereby creating probable cause to search vehicle); *United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989) (detection of marijuana odor emanating from vehicle provides law enforcement with probable cause to search vehicle); *United States v. Henke*, 775 F.2d 641, 645 (5th Cir. 1985) ("Once the officer smelled the marijuana, he had probable cause to search the vehicle."); *United States v. Ibarra-Sanchez*, 199 F.3d 753, 760 (5th Cir. 1999) ("Regardless of precisely how near or far from the van the officers were when they detected the odor, once they did so they possessed probable cause to search").

Furthermore, "if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 U.S. at 825. The search may include containers within the vehicle as long as officers "have probable cause to believe evidence or contraband is contained" inside. *California v. Acevedo*, 500 U.S. 565, 580 (1991).

Here, the Court has credited Officer Wilson's sworn and uncontroverted testimony that he smelled marijuana coming from the stopped vehicle. The marijuana smell provided the officers with probable cause to search the vehicle and its contents. Accordingly, the warrantless search of the vehicle did not violate the Fourth Amendment, and the evidence seized as a result of the search should not be suppressed.

**III.    Incriminating Statements**

Apart from seeking suppression of all evidence and statements that were the product of the warrantless search of his automobile, Warfield's motion does not otherwise address the suppression of any incriminating statements. Moreover, Warfield does not contend that any statement he may have made, all of which apparently were uttered post-*Miranda,* were not freely and voluntarily conveyed. In the absence of any alleged *Miranda* or cognizable constitutional violations, the Court necessarily concludes that there is no basis to suppress any of Warfield's statements. *United States v. Needham*, Cr. No. 11-185, 2011 WL 13124280, at *8 (W.D. La. Oct. 26, 2011), *aff'd,* 546 Fed. App'x. 353 (5th Cir. 2013); *see also United States v. Pace*, 955 F.2d 270, 278 n.9 (5th Cir. 1992) (denial of the motion to suppress evidence seized at defendant's barn also disposes of his argument that the statements he made after the search of the barn and his arrest were inadmissible at trial).

**Conclusion**

For the above-stated reasons,

IT IS RECOMMENDED that the motion to suppress [doc. # 21] filed by Defendant, Kencunyea Warfield, be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen(14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 1st day of April, 2025.

_____
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE